# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 CV 1958 | **DATE** | May 25, 2011 |
| **CASE TITLE** | *McCadd v. Murphy* | | |

**DOCKET ENTRY TEXT**

The plaintiffs' consolidated motions *in limine* [77-1] are granted in part and denied in part as detailed below. The defendants' consolidated motions *in limine* [78-1] are granted in part, denied in part, or the court defers ruling on the motion, as detailed below.

■ [ For further details see text below.]    Docketing to mail notices.

00:00

# STATEMENT

Plaintiffs Anna McCadd and her son Harold (for clarity, the court shall use only their first names) allege that Chicago police stormed their home looking for drugs not once but twice, coming up empty-handed on both occasions. Police arrested Harold after the second search, but prosecutors eventually dropped the charges due to lack of evidence. Harold and Anna, who is in her 90's, have sued the City of Chicago and four of its police officers for illegal search and false arrest in violation of the U.S. Constitution, *see* 42 U.S.C. § 1983, as well as a variety of state law claims including malicious prosecution.

Before the court are motions *in limine* the parties have filed in advance of trial. Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Evidence should be excluded on a motion in limine "only when evidence is clearly inadmissible on all potential grounds [and unless] evidence meets this high standard, evidentiary rulings should be deferred until trial." *Steck v. Bimba Mfg Co.*, 96 CV 7442, 1997 WL 685003, at *1 (N.D. Ill. Oct. 30, 1997) (internal quotation marks and citation omitted). The denial of a motion in limine does not mean that the evidence is necessarily admissible, rather, it means only that the party moving in limine has not demonstrated that there is no possible basis for the admission of the evidence. *Holmes v. Sood*, No. 02 CV 7266, 2006 WL 1988716, at *1 (N.D. Ill. July 12, 2006); *see also Alexander v. Mt. Sinai Hosp. Med. Center of Chicago*, No. 00 C 2907, 2005 WL 3710369 at *2 (N.D. Ill. Jan.14, 2005). Further, the denial of a motion in limine does not preclude a party from objecting to the admission of any evidence at trial. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989) ("a ruling [on motion in limine is] subject to change based upon the court's exposure to the evidence at trial").

Keeping in mind these observations, the court addresses the parties' motions *in limine* in turn.

**Plaintiffs' Consolidated Motions *in Limine* [77-1]**

*Plaintiffs' Motion #1 to Bar Any Reference To Harold McCadd's Prior Arrests and Convictions*

In this motion, the plaintiffs seek to bar the defendants from referring to Harold's prior arrests and/or his

conviction in 1986 of an unidentified crime. Under Federal Rule of Evidence 609, evidence of a prior felony conviction or other conviction involving dishonesty may be used to attack a witness' credibility, but only if it is less than ten years old. Thus, none of the arrests are admissible to attack his credibility, nor is his sole conviction because it occurred more than ten years ago.

Nevertheless, the defendants argue that they are entitled to use evidence of McCadd's March 25, 2004, arrest for possession of cocaine, not to attack his credibility but, rather, as information defendant officer William Murphy used to corroborate an affidavit he obtained from a confidential informant, which he then used to establish probable cause for a warrant to search the McCadd home. Probable cause may be established by affidavit if the affidavit identifies sufficient evidence to convince a reasonable person that a search will uncover evidence of the alleged crime. *United States v. Carmel*, 548 F.3d 571, 575 (7th Cir. 2008). However, when an informant supplies the facts in the affidavit, the probable cause determination also turns on the informant's credibility, including the extent to which the informant's information can be corroborated. *See United States v. Bell*, 585 F.3d 1045, 1049-50 (7th Cir. 2008).

The plaintiffs contend that Murphy's review of the report of Harold's arrest is irrelevant because during his deposition Murphy stated that he used the arrest report only to verify Harold's address, not to confirm that the informant was telling the truth:

> Q: You weren't using that [the arrest report] for any kind of indication [that] what John Doe was telling me was true?
>
> A: No. . . . just to try to verify residency.

Murphy Deposition (attached as Exhibit A to Reply [81-1]) at 75 (lines 14-21).

Evidence of the steps officer Murphy took to corroborate the confidential informant's affidavit are relevant to whether the affidavit provided probable cause for the search warrant. If Murphy testifies at trial that he used the 2004 arrest to corroborate the informant, then evidence of the arrest shall not be excluded. To the extent that Murphy's prior deposition testimony is inconsistent with his anticipated trial testimony, the prior deposition testimony is available to impeach Murphy's trial testimony, but not to exclude it.

Accordingly, the motion *in limine* is granted in part and denied in part as follows: the motion to exclude evidence that Murphy reviewed McCadd's 2004 arrest to corroborate the informant's affidavit is denied, while the motion to exclude all other arrests and his prior conviction is granted. *See* Fed. R. Evid. 609.

### *Plaintiffs' Motion #2 to Exclude Evidence of Harold's Prior Drug Use*

Next, the McCadds seek to exclude evidence of Harold's prior use of marijuana and cocaine. The defendants respond that they will not elicit such evidence unless Harold first opens the door. Accordingly, the motion to exclude evidence of Harold's prior drug use is granted unless Harold raises the issue himself.

### *Plaintiffs' Motion #3 to Bar Reference to Irrelevant Subjects*

The McCadds move to bar any evidence of several matters that arose during their depositions but which they contend are irrelevant. Those five matters are: (1) that the plaintiffs receive public aid; (2) that Harold attended an alcohol rehabilitation program; (3) that Harold and friends may have smoked marijuana in his home

before the second search; (4) 911 calls of narcotics sales at the McCadd home; and (5) empty baggies found under Harold's bed during the first search of his home. The defendants respond that they do not intend to introduce evidence about public aid or alcohol rehabilitation. Accordingly, the motion to exclude evidence on those two matters is granted.

The defendants respond that they also do not intend to introduce evidence that Harold may have used marijuana before the second search unless Harold opens the door by denying prior drug use. Accordingly, consistent with the court's ruling on plaintiffs' motion #2, evidence of Harold's prior drug use is excluded unless Harold raises the issue himself.

The defendants object to the motions to exclude evidence on the two remaining matters. First, the defendants contend that evidence of 911 calls reporting drugs sales at the McCadd's home are relevant because "a reasonable jury could infer that Mr. McCadd, one of only two residents at 9429 S. Loomis, was selling drugs from that residence." Response [79-1] at 4. However, to the extent the defendants are arguing that the reports of drug sales provided probable cause to search the McCadd home, the defendants do not contend that officers knew about the calls when obtaining the search warrant. Because probable cause turns on what officers knew at the time, and the defendants do not contend that officers knew about the 911 calls, the calls are not relevant to the issue of probable cause. *See Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2010) (information unknown at the time the warrant issued is irrelevant to whether probable cause existed).

Alternatively, the defendants argue that the calls establish that Harold is a "hardened drug dealer," and that the "police raid" on his house would have had little "emotional effect" on him and, therefore, is relevant to the issue of damages. However, the calls do not establish that Harold dealt drugs, merely that calls reported suspected drug activity. Therefore, the motion to exclude evidence of the 911 calls is granted.

Second, the defendants contend that evidence of baggies found under Harold's bed during the first search of his home is relevant "for the same reasons as the 911 calls are relevant." Response [79-1] at 4. Specifically, the defendants argue that the baggies are relevant for two reasons. First, they argue that baggies found during the first search provided probable cause to obtain the warrant for the second search. However, the defendants have identified no evidence in the record that officers who obtained the warrant for the second search knew about the baggies found during the first search. Second, the defendants argue that the baggies are relevant to the issue of damages, presumably because they believe that the baggies are additional evidence that Harold is a hardened drug dealer. However, no drugs were found in the baggies and, therefore, baggies alone are not evidence that Harold is a hardened drug dealer.

Accordingly, the motion to exclude evidence of the baggies is granted.

> ***Plaintiffs' Motion #4 to Bar Any Argument that Taxpayers Must Pay Any Judgment***
> ***Plaintiffs' Motion #5 to Exclude Witnesses from the Courtroom Prior to Testifying***

The defendants do not object to these motions and, therefore, they are granted.

**Defendants' Consolidated Motions *in Limine* [78-1]**

> ***Motion to Bar Evidence or Argument Regarding Strip Search of Harold McCadd***

In this motion, the defendants seek to exclude any evidence or argument regarding two strip searches of Harold

McCadd. The first occurred in his home during the first search of his house. The second occurred at the police station following his arrest during the second search of his home. The defendants contend that evidence that the searches were strip searches should be excluded as irrelevant and highly prejudicial.

In response, the plaintiffs contend that the first strip search is admissible because the fact that officers found no drugs on his person during the first search is relevant to whether officers had probable cause to obtain a warrant for the second search. As discussed above, probable cause is determined based on what was known at the time the warrant issued. *See Guzman*, 565 F.3d at 396. The McCadds are therefore entitled to present evidence of what officers knew when obtaining the warrant for the second search of their home, including the strip search that allegedly occurred during the first search of their home.

As for the second search, it allegedly occurred at the police station following his arrest during the second search of his home. Therefore, it is relevant to the damages he claims he suffered as a result of his alleged false arrest.

The defendants contend that even if the strip searches are relevant, they should nevertheless be excluded as highly prejudicial. Specifically, the defendants contend that any mention of a strip search will be "highly inflammatory" and poses a "substantial risk that it will inflame the passion of the jury" and "pose a risk of jury nullification." Memorandum [78-1] at 2; Reply [82] at 1.

Under Federal Rule of Evidence 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . ." However, the defendants have previously described the search as being inoffensive:

> the alleged body search was limited in scope, conducted in a professional manner, in the privacy of Plaintiff Harold McCadd's bedroom, and thus a reasonable search. (56.1 ¶¶ 29, 30, 31, 33). Plaintiff Harold McCadd admits that the body search was performed to see if he was concealing any drugs or weapons on his person. (56.1 ¶ 32). He admits that the search was performed in a professional manner. (56.1 ¶ 33). Plaintiff Harold McCadd testified that the search took place in his bedroom with the windows closed and the curtains drawn. (56.1 ¶¶ 29, 30). Finally, Plaintiff Harold McCadd admits that the entire search was performed visually without any physical contact. (56.1 ¶ 31).

Memorandum in Support of Motion for Summary Judgment [58-1] at 8-9. Given the defendants' evidence that that the search was private, inoffensive, and involved no contact, their argument that jurors will be inflamed upon hearing about the search is not well-founded. As a result, the probative value of the search is not substantially outweighed by the danger of unfair prejudice.

Accordingly, evidence of the strip searches is admissible and the motion to bar such evidence is denied.

### *Motion to Bar Evidence Regarding the Identity of J. Doe Informant*

The defendants seek to bar the plaintiffs from "asking questions of the officers concerning the identify of the J. Doe informant." Memorandum [78-1] at 2. The plaintiffs oppose the motion, arguing that they are entitled to "impeach Officer Murphy's reliance on John Doe for the purpose of determining whether there was probable cause for the warrant." Response [80-1] at 2.

| STATEMENT |
|---|

The identity of confidential government informants is protected unless the party seeking disclosure shows that his need for the informant's identity outweighs the need to protect the informant's confidentiality. *See Roviaro v. United States*, 353 U.S. 53, 61-62 (1957); *United States v. Herrero*, 893 F.2d 1512, 1525 (7th Cir. 1990). The plaintiffs have made no effort to show that their need for the informant's identity outweighs the need to protect the informant's confidentiality and, therefore, may not seek to elicit the informant's identity at trial.

Accordingly, the motion to bar questions seeking the identity of the confidential informant is granted. However, this ruling does not preclude the plaintiffs from making general inquiries about the informant designed to shed light on the reasonableness of officers' reliance on the information procured from the informant, such as: "(1) the extent to which police corroborated the informant's statements; (2) the degree to which the informant acquired knowledge of the events through first-hand observation; (3) the amount of detail provided; (4) the interval between the date of the events and the police officer's application for the search warrant; and (5) whether the informant appeared before the issuing judge so that the judge could assess the informant's credibility." *United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2008).

### *Motion to Bar Evidence that J. Doe is No Longer an Informant*

Next, the defendants seek to bar evidence or argument that officers no longer consider J. Doe to be sufficiently credible to use as a confidential informant. The plaintiffs contend that such evidence is relevant for two reasons. First, they argue that evidence that officers no longer use J. Doe as a confidential informant supports their position that they should be able to elicit the informant's identity at trial. However, as discussed above, to obtain the informant's identity the plaintiffs needed to show that they were entitled to have the confidential privilege set aside, which the plaintiffs have not attempted to do. Second, the plaintiffs argue that officers' conclusion that the informant is not sufficiently credible shows that officers did not reasonably rely on information from the informant when obtaining the warrant to search the McCadd home. However, in determining whether the warrant was supported by probable cause, the court looks to what officers knew at the time they sought the warrant, not with the benefit of hindsight. *See Beauchamp v. City of Noblesville*, 320 F.3d 733, 742-43 (7th Cir. 2003). Accordingly, officers' discovery after executing the warrant that the informant was unreliable is irrelevant to what they knew when they obtained the warrant.

Accordingly, the motion to bar evidence that J. Doe is no longer an informant is granted.

### *Bar Evidence or Argument Regarding Absence of Field Testing*

The defendants also seek to bar evidence that officers did not field test what turned out to be talcum powder before arresting Harold during the second search of his home. The defendants contend that discovery of a substance they believe to be drugs can give an officer probable cause to arrest even in the absence of field testing. However, in the authority they cite in support of their contention, probable cause to arrest was supported by more than just the discovery of a suspicious looking substance that officers never tested. For instance, in *United States v. Johnson*, 383 F.3d 538, 545 n.9 (7th Cir. 2004), the discovery of powder on the defendant's hat led officers to search his car. The court held that even though officers did not test the powder to confirm that it was illicit, the search was supported by probable cause because officers were also aware of the defendant's cocaine habit, and that the defendant appeared to be unhealthy and "strung out." Likewise, in *Daniels v. City of Chicago*, No. 08 CV 6832, 2011 WL 887852, at *10 (N.D. Ill. Mar. 8, 2011), the court's finding of probable cause despite the absence of field testing was based upon other indications that a package contained drugs, including packaging that resembled the way narcotics were typically packaged, along with "red dots that Officer Darling associated with the practice of 'cutting' narcotics with other substances."

In sharp contrast, the officers here had already determined that information obtained from the confidential informant about what to expect inside the McCadd home had proven to be unreliable. Accordingly, the authority they cite does not support their contention that field testing was unnecessary as a matter of law. Because probable cause is judged by whether the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense," the defendants have failed to demonstrate, based on the circumstances presented by this case, that the absence of any field test of the talcum powder is irrelevant to whether they had probable cause to arrest. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Accordingly, the motion to bar evidence or argument about the absence of field testing is denied.

### *Bar Evidence that the Seized Powder Tested Negative for Narcotics*

Next, the defendants seek to bar evidence or argument that the powder found during their search of the McCadd home tested negative for narcotics. The defendants contend that the test results are irrelevant because probable cause turns on what the officer knew at the time, not on later-discovered facts.

However, the fact that the powder tested negative is relevant for two other reasons. First, it completes the story of officers' discovery of the powder. Without evidence that it tested negative, jurors would be left to speculate about whether tests were performed and, if so, the results. Likewise, it completes the story of Harold's malicious prosecution case because it contributed to the termination of the criminal proceedings against him. *See* Fed. R. Evid. 401 (1972 Proposed Rules) ("Evidence which is essentially background in nature . . . is universally offered and admitted as an aid to understanding."); *see also Pease v. Production Workers of Chicago*, No. 02 CV 6756, 2003 WL 22012678, at *2 (N.D. Ill. Aug. 25, 2003) ("This is a broad definition which allows background evidence to be 'universally offered and admitted as an aid to understanding.'").

Accordingly, the motion to bar evidence of the test results is denied.

### *Bar Evidence or Argument About Missing Photographs*

In this motion, the defendants seek to bar evidence that photographs officers took of the aftermath of their second search of the McCadd home no longer exist. According to the defendants, technical difficulties prevented officers from saving the pictures onto a disc and, as a result, the pictures were not preserved.

The fact that evidence is unavailable is admissible if the loss was willful or in bad faith and, in fact, it gives rise to a presumption that the evidence would be adverse to the party who no longer has it. *Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th Cir. 1983). Even if the loss was not willful or in bad faith, the presumption that it would be adverse still arises if the evidence was not preserved in violation of a retention policy. *See Beniushis v. Apfel*, No.98 CV 395, 2001 WL 303548, *4 (N.D. Ill. Mar. 27, 2001).

The defendants offer two arguments why evidence of the lost pictures should nevertheless be barred. First, they contend that it would be "improper to ask the jury to speculate about the absence of the photographs." Memorandum [78-1] at 6. In support, the defendants cite to *Caldwell v. City of Chicago*, No. 08 CV 3067, 2010 WL 380696, at *3 (N.D. Ill. Jan. 28, 2010), in which the court barred the plaintiff from insinuating that the defendants had purposefully hidden exculpatory evidence. However, in *Caldwell*, whether evidence was missing at all was entirely speculative. In contrast, the defendants here admit that the photographs are missing.

Second, the defendants contend that the Chicago Police Department lacks any policy of retaining photographs. However, the issue is disputed by the plaintiffs and is therefore a question of fact. Moreover, even if the Chicago Police Department did not require officers to retain photographs, the presumption that the photographs would be adverse to the defendants would still arise if the plaintiffs can show that they were destroyed in bad faith.

Accordingly, the motion to bar evidence that the photographs are missing is denied.

### *Motion to Bar Anna McCadd's Statement to Daughter*

Next, the defendants seek to bar testimony by Anna's daughter about a phone call during which Anna allegedly described how officers had ransacked her home while searching it with a dog. The plaintiffs concede that the daughter's testimony about the out-of-court statements of her mother would involve hearsay, but argue that such statements fall within the excited utterance exception to the hearsay rule. Under Federal Rule of Evidence 803(2), a hearsay statement is admissible as an excited utterance if: (1) a startling event occurred; (2) the declarant made the statement while under the stress of excitement caused by the startling event; and (3) the declarant's statement relates to the startling event. *United States v. Vargas*, No. 08 CR 630, 2011 WL 116826, at \*2 (N.D. Ill. Jan. 6, 2011).

Although the plaintiffs state that Anna's call came after police had already left her home, the parties reveal few other details surrounding the call. Accordingly, at this time the court has before it insufficient details to determine whether Anna's statements during the call constitute excited utterances.

Accordingly, the court defers ruling on the motion at this time. If, at trial, the defendants believe that testimony about the circumstances surrounding the telephone call do not establish that Anna's statement was an excited utterance, they may renew their motion to exclude at that time.

### *Motion to Bar Evidence About Whether Harold McCadd Received* **Miranda** *Warnings*

The defendants also seek to exclude evidence about whether Harold received *Miranda* warnings. The plaintiffs respond that they will not seek to introduce such evidence. Accordingly, the motion is granted.

### *Motion to Bar Evidence About the Length of Harold McCadd's Detention*

In this motion, the defendants seek to bar Harold from introducing evidence about the length of time he was detained in lockup by Chicago police. In support, the defendants contend that the length of his detention is irrelevant because he has brought only a false arrest, not an unlawful detention, claim and, in any event, his length of detention did not exceed 48 hours and is therefore presumptively reasonable.

Harold has not brought an unlawful detention claim. However, his detention is nevertheless relevant because it constituted the time between his arrest and his release, the period of time for which he would be entitled to reasonably foreseeable damages if he prevails on his false arrest claim. *See Ross v. City of Evanston*, No. 96 CV 6042, 1998 WL 177738, at \*2 (N.D. Ill. Apr. 13, 1998).

Accordingly, the motion to bar evidence of the length of his detention is denied.

| STATEMENT |
|---|

### *Motion to Bar Anna's Statement that Officers Beat Up Men in Her Neighborhood*

The defendants next seek to bar testimony that officers beat up young men in the McCadd's neighborhood, as described by Anna during her deposition. The defendants contend that such testimony would be propensity evidence that is inadmissible under Federal Rule of Evidence 404(b). However, the plaintiffs propose using such evidence not to show officers' propensity to beat up young men but, rather, to explain that Anna's consent to the first search of her home was not voluntary but, rather, done out of fear that officers would beat up Harold if she refused to consent. Because the evidence is not being used to show propensity, it is not barred under Rule 404(b).

Alternatively, the defendants argue that the evidence is unduly prejudicial, and should therefore be excluded under Rule 403. As discussed above, under Rule 403 admissible evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Anna's argument that her consent to search was not voluntary is firmly rooted in her alleged fear that officers would beat up Harold like they had beaten up other men. Therefore, testimony about her fear and upon what it was based is highly probative of the issue of whether her consent was voluntary. The court acknowledges that testimony about officers beating up men in unrelated cases may carry a danger of unfair prejudice, but finds that a limiting instruction would ameliorate any danger and ensure that it does not substantially outweigh the probative value.

Accordingly, the motion to bar testimony from Anna that officers beat up young men in her neighborhood is denied. The parties are directed to draft an agreed limiting instruction for use in the event that plaintiffs offer such evidence.

### *Motion to Bar Evidence of Unrelated Complaints About the Defendant Officers*

The defendants seek to bar evidence of complaints or previous lawsuits against the defendant officers unrelated to the events at issue in this lawsuit. The plaintiffs respond that they will not seek to introduce such evidence.

Accordingly, the motion to bar evidence of complaint or previous lawsuits against the defendant officers is granted.

### *Motion to Bar Witnesses Southerland, King, Wells and "Phil"*

Finally, the defendants seek to bar the plaintiffs from presenting the following persons as witnesses: Anthony Southerland, Michael King, Chandra Wells, and "Phil." The defendants seek to exclude Southerland, Wells and "Phil" as witnesses because the plaintiffs' Federal Rule of Civil Procedure 26(a)(1) disclosures failed to provide addresses, contact numbers, or other identifying information for those witnesses and therefore were inadequate.

When a party fails to meet its disclosure obligations under Federal Rule of Civil Procedure 26(a), "the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether a failure to disclose was substantially justified or harmless, the following factors are relevant: (1) the prejudice or surprise to the opposing party; (2) the ability to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in failing to timely disclose the evidence or witness. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

## STATEMENT

The first factor is satisfied by the fact that the defendants have been unable to locate Southerland, Wells, and "Phil" and therefore have been unable to depose them in order to determine what their trial testimony would be. The defendants would therefore be subject to unfair surprise and be prejudiced by their inability to adequately prepare for trial. As for the second factor, the plaintiffs state that they still have no contact information for Southerland and "Phil" and, therefore, the plaintiffs have identified no basis for concluding that the prejudice could be cured. Although the defendants have identified nothing in the record that points to bad faith or willfulness on part of the plaintiffs, the court concludes in its discretion that, on balance, the relevant factors favor the exclusion of Southerland and "Phil" as witnesses at trial.

On the other hand, the plaintiffs provided additional contact information to the plaintiffs for Wells who, according to the plaintiffs, could not be reached any earlier because she suffered a stroke and has only recently been well enough to be deposed. Because Wells was deposed on May 16, 2011, and because trial is still weeks away, the court concludes that, on balance, the plaintiffs have demonstrated that their earlier failure to provide adequate contact information for Wells was substantially justified or harmless. The motion to exclude Wells as a witness is therefore denied.

Finally, the defendants also seek to exclude Michael King as a witness because he did not comply with their properly-served subpoena for deposition. However, the defendants have cited no authority to support their argument that a non-party's non-appearance for deposition justifies imposing the sanction of exclusion on the plaintiffs. Moreover, even though the deposition at which King failed to appear was scheduled for January 12, 2010, the defendants never filed a motion to compel or any other appropriate motion designed to address the issue in a timely manner. Accordingly, the motion to exclude King as a witness is denied.